## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SECURITIES AND EXCHANGE
COMMISSION,

                              Plaintiff,                    Civil Action No.

            v.                                             <u>Jury Trial Demanded</u>

ANDREW K. PROCTOR, and
ATLAS JG, LLC,

                              Defendants.

## <u>COMPLAINT</u>

Plaintiff Securities and Exchange Commission (the "Commission") alleges as follows:

### <u>SUMMARY</u>

1.      This matter involves an offering fraud conducted by Defendant Andrew K. Proctor ("Proctor") and Defendant Atlas JG, LLC ("Atlas"), a Delaware limited liability company formed by Proctor in 2006.

2.      From 2007 through 2011, Proctor, through Atlas, raised more than $22 million from at least 200 overseas investors through a fraudulent offering of purported bonds promising annual returns of eight to nine percent.

3.      Proctor induced investors to purchase these fraudulent securities by making materially false and misleading statements and omissions concerning, among other things, the use of investor funds.

4.      Proctor told prospective investors that their funds would be used to purchase receivables from homebuilding subcontractors at a discount, and that Atlas would profit from

the difference between the discounted price and the amount ultimately collected from homebuilders.

5.      In actuality, Atlas used less than ten percent of the funds raised to buy receivables from homebuilding subcontractors as promised, the last purchase occurring in 2008.  However, Proctor continued to fraudulently raise funds from investors for several years thereafter.

6.      Contrary to what investors were told, Proctor used at least $11.2 million of investor funds to make so-called "interest" and "principal" payments to investors.  He used the balance of the proceeds raised to, among other things, fund offshore investments in Asia, speculate in stock options and other derivatives, and finance his lifestyle.  Proctor took at least $2.8 million to pay personal expenses, including his mortgage, his credit card bills, and his children's tuition.

7.      By knowingly or recklessly engaging in the conduct described in this Complaint, Defendants Proctor and Atlas violated, and unless enjoined will continue to violate, Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**JURISDICTION AND VENUE**

8.      The Commission brings this action pursuant to Sections 20(b) and 20(d) of the Securities Act [15 U.S.C. §§ 77t(b) and 77t(d)], and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], to enjoin such acts, transactions, practices, and courses of business, and to obtain disgorgement, prejudgment interest, civil penalties, and such other and further relief as the Court may deem just and appropriate.

9.      This Court has jurisdiction over this action pursuant to Sections 20(b) and 22(a)

of the Securities Act [15 U.S.C. §§ 77t(b) and 77v(a)] and Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa].

10.     Venue in this District is proper pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa].  Among other things, certain of the acts, transactions, practices, and courses of business constituting the violations alleged herein occurred within the District of Delaware.

## DEFENDANTS

11.     **Andrew K. Proctor**, age 59, resides in Perris, California.  Proctor is the founder and sole managing member of Defendant Atlas.  On January 11, 2005, Proctor pled guilty to one count of conspiracy to commit wire fraud and securities fraud in the Central District of California in connection with a penny stock pump-and-dump scheme and was sentenced to six months of home detention, a $20,000 fine, and three years of probation.  In addition, Proctor was barred by the Commission from participating in the penny stock market.

12.     **Atlas JG, LLC** is a Delaware limited liability company formed by Proctor in 2006.  From 2007 through 2011, Atlas issued at least four series of purported bonds.

13.     The Commission, Proctor and Atlas have agreed that the running of any statute of limitations applicable to any action against Proctor and Atlas authorized, instituted or brought by the Commission arising out of the Commission's investigation of the facts described herein, including any sanctions or relief that may be imposed therein, has been tolled and suspended for the period from November 1, 2014 through June 15, 2016.

## FACTS

A.      **Formation of Atlas JG, LLC**

14.     During the real estate boom of the early 2000s, large U.S. homebuilders often

took months to pay their subcontractors.  Without a stream of payment, subcontractors could not accept new work because they were unable to meet their cash needs.

15.      In 2006, Proctor formed Atlas, purportedly to provide capital to subcontractors while the subcontractors waited for builders to pay for the work they had performed.

16.      At all relevant times, Atlas acted by and through Proctor.

17.      Through a friend, Proctor was introduced to an individual in Hong Kong ("Hong Kong Business Associate") who was a principal of a British Virgin Islands corporation that purported to be in the business of natural resources trading and logistics.  The Hong Kong Business Associate assisted Proctor in marketing Atlas bonds to investors in Taiwan.

18.      During the period from 2007 through 2011, Proctor issued at least four series of purported bonds to over 200 overseas investors—all of whom appear to be located in Taiwan—raising approximately $22.3 million.

19.      Proctor engaged a registered transfer agent located in Delaware to serve as Atlas' transfer agent, paying agent, and registrar.

20.      To purchase the bonds, investors completed and signed subscription agreements, which were sent to Proctor and countersigned by him in the U.S. on behalf of Atlas.

21.      Investors wired their purchase payments directly to an Atlas escrow account held at the transfer agent in Delaware.  After an investment, purported interest and redemption payments were sent to investors from this same Delaware account.

**B.**      **Material Misrepresentations And Omissions**

22.      Proctor drafted written offering documents that were used to solicit investors for Atlas.  The offering documents for each of the four bond series consisted of a bond purchase agreement, a short six-page summary of the offering, and a subscription agreement.

23.     In the written offering documents, Proctor claimed that Atlas would make money by purchasing receivables from homebuilding subcontractors at a discount:  Atlas would purchase a subcontractor's receivable due from the homebuilder, along with the attached lien rights, for approximately 75-90% of the receivable.  Proctor claimed that when the homebuilder paid the subcontractor, the funds would be paid to Atlas, and Atlas' profit would be the 10-25% difference between the amount it paid the subcontractor for the receivable and the amount paid in full by the homebuilder to satisfy its obligation.  Proctor claimed that investor returns would be generated from these profits.

24.     The offering documents for each of the four bond series contained the same disclosures regarding the use of investor proceeds:  "The proceeds of the Offering are to be used to purchase receivables with lien rights due from national homebuilding companies from [sub]contractors for completed work and materials supplied."

25.     The offering documents stated that investors would receive eight to nine percent annual interest paid quarterly and that the bonds would mature in five years (the first series on December 31, 2012, the second on December 31, 2013, the third on December 31, 2014, and the fourth on December 31, 2015).

26.     The offering documents provided that investors could redeem prior to the maturity date with 60 days written notice or, at maturity, Atlas would repay the principal investment in full.

27.     The offering documents also stated that Atlas could engage a placement agent and pay a 1.25% fee to that placement agent.

**C.     Misuse of Investor Funds**

28.     Contrary to what investors were told, Proctor used more than 90% of investor

funds for purposes other than the purchase of receivables from homebuilding subcontractors.

29.     Between 2007 and 2011, Atlas used only $1.9 million of investor funds to purchase homebuilding receivables, and all of those purchases occurred in 2007 and 2008.

30.      In May 2008, Proctor used Atlas funds to enroll himself in a class on writing call options—a highly risky form of derivatives trading.

31.     Less than three weeks later, Proctor began purchasing stock options and other derivatives with investor money.

32.     Proctor moved investor funds through a web of shell companies and accounts that made tracing and detection of his activities difficult.

33.     From 2008 through 2011, Proctor funneled approximately $3.1 million from Atlas bank accounts to two brokerage accounts in the name of Ocean Funding LLC, a Delaware company that Proctor controlled.  Proctor used this $3.1 million to speculate in the stock and options market.

34.     For example, from May 28 to July 25, 2008, Proctor executed several hundred stock and options transactions, including in complex instruments such as calls, spreads, and straddles.  Proctor lost nearly $1 million on this trading alone.

35.     From December 2007 through September 2011, Proctor also channeled over $7 million to his Hong Kong Business Associate's natural resources company.  Of this amount, approximately $2.7 million was purportedly for various coal shipping investments; approximately $2.2 was purportedly for payment of "marketing fees;" and the remaining balance of $2.1 million was purportedly for payment of various "agent deposit[s]," "collateral," and "advance[s]."

36.     In addition, from January 2010 through July 2012, Proctor transferred more than

$3 million to Commercial Acceptance LLC, a Delaware company that he controlled.  The

majority of those funds were then purportedly used to finance coal trading activities in Asia.

For example, on January 10, 2011, Proctor wired $600,000 from an Atlas bank account to

Commercial Acceptance LLC.  Two days later, Commercial Acceptance LLC wired $500,000

to the Hong Kong Business Associate's natural resources company referencing "Indonesian

Coal Trade."

37.     Further, between December 2007 and the end of 2014, Proctor withdrew

approximately $2.8 million from Atlas bank accounts and deposited the funds with two entities

that Proctor personally controlled.   Neither company provided any services to Atlas.  Proctor

falsely described the transfers as administrative, advisory, and management fees, or bond fees

and advances.

38.     In reality, Proctor spent the $2.8 million that he transferred to these two entities to

benefit himself and his family.  Proctor used the funds to make tuition payments for his

children, pay down his mortgage and credit card bills, and generally fund his lifestyle.

39.     During the period from 2007 through 2014, while misusing investor funds,

Proctor returned approximately $4.9 million in principal to investors and paid approximately

$6.3 million to investors in purported interest to maintain the appearance that the investments

were performing as represented.

### CLAIMS FOR RELIEF

### FIRST CLAIM
### Violations of Section 17(a) of the Securities Act

40.     The Commission realleges and incorporates by reference each and every

allegation in paragraphs 1 through 39, inclusive, as if they were fully set forth herein.

41.     By engaging in the conduct described above, Defendants Proctor and Atlas,

knowingly or recklessly, in the offer or sale of securities, directly or indirectly, by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails:

    a.  employed devices, schemes, or artifices to defraud;

    b.  obtained money or property by means of an untrue statement of a material fact or an omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

    c.  engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

42.      By engaging in the foregoing conduct, Defendants Proctor and Atlas violated, and unless enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

### SECOND CLAIM
### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

43.      The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 42, inclusive, as if they were fully set forth herein.

44.      By engaging in the conduct described above, Defendants Proctor and Atlas, knowingly or recklessly, in connection with the purchase or sale of securities, directly or indirectly, by the use of any means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange:

    a.  employed devices, schemes, or artifices to defraud;

    b.  made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

     c.   engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

45.     By engaging in the foregoing conduct, Defendants Proctor and Atlas violated, and unless enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a final judgment:

## I.

Permanently restraining and enjoining Defendants Proctor and Atlas from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

## II.

Ordering Defendants Proctor and Atlas to disgorge any and all ill-gotten gains derived from the activities set forth in this Complaint, together with prejudgment interest thereon;

## III.

Ordering Defendants Proctor and Atlas to pay civil penalties under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)]; and

## IV.

Granting such other and further relief as this Court may deem just and appropriate.


Respectfully submitted,

Date:  June 14, 2016

Sharon B. Binger
G. Jeffrey Boujoukos
David L. Axelrod
Kelly L. Gibson
Julia C. Green
Assunta Vivolo

SECURITIES AND EXCHANGE COMMISSION
Philadelphia Regional Office
1617 JFK Blvd., Suite 520
Philadelphia, PA 19103
Telephone:  (215) 597-3100
Facsimile:   (215) 597-2740
greenju@sec.gov